# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MARY L.,** | |
| *Plaintiff,* | No. 24-cv-10716 |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY**, | |
| *Defendant*. | |

<u>**APPEARANCES**</u>:

**Alan Harris Polonsky**
POLONSKY & POLONSKY
512 S White Horse Pike
Audubon, NJ 08106

   *On behalf of Plaintiff.*

**John Giordano**
**Abby E. Rill**
UNITED STATES ATTORNEY
SOCIAL SECURITY ADMINISTRATION
OFFICE OF PROGRAM LITIGATION
6401 Security Boulevard
Baltimore, MD 21235

   *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on Plaintiff Mary L.'s[1] ("Plaintiff") appeal from a denial of Social Security disability benefits and supplemental security income by the Acting Commissioner of Social Security ("Commissioner"). (ECF No. 1). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court **AFFIRMS** the Commissioner's decision.

## I.    BACKGROUND

The Court recites herein only those facts necessary for its determination on this appeal.

### A. Administrative History

Plaintiff filed an application for a period of Disability and Insurance Benefits ("DIB") on November 9, 2017, alleging an onset date of disability beginning October 6, 2017, due to degenerative disc disease, spinal stenosis, Hashimoto's disease, fibromyalgia, anxiety, depression, and obesity. (AR 284–90, 302). Plaintiff's claims were denied initially on May 24, 2018, (AR 221–26), and upon reconsideration on September 26, 2018. (AR 228–30).

On October 16, 2018, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 231). A hearing was held on October 7, 2019. (AR 136–82). Plaintiff, who was represented by counsel, testified, as did a Vocational Expert ("VE"). (*Id.*). The ALJ issued a Decision Denial on October 25, 2019. (AR 17–36). Plaintiff appealed the decision to the Appeals Council on December 18, 2019, (AR 279–83), which denied the request for review on August 25, 2020. (AR 2–8). Plaintiff then initiated an appeal in this Court on October 9, 2020, pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). (No. 20-14158, ECF No. 1). The Court remanded the

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

matter back to the Appeals Council on April 7, 2022. (AR 1181–1200). On November 22, 2022, the Appeals Council issued a remand Order vacating the prior ALJ decision and remanding for further consideration. (AR 1226–30). Pursuant to that Order, another hearing was held before the ALJ on March 17, 2023. (AR 1143–73). Plaintiff, who was represented by counsel, testified, as did a VE. (*Id.*). The ALJ issued a Decision Denial on May 3, 2023. (AR 1110–38).

Following that denial, the Appeals Council took no action to further review the matter in 60 days such that the decision became final, and Plaintiff filed a second appeal in this Court pursuant to § 405(g) and § 1383(c)(3). (No. 23-03569, ECF No. 1). The Commissioner filed a motion to remand, which was granted by this Court on October 27, 2023. (AR 3406–07). Thereafter, the Appeals Council entered a new remand order on December 3, 2023, which directed that the matter be assigned to a different ALJ. (AR 3410–16).

Accordingly, the matter was re-assigned, and a hearing was held before a new ALJ on August 21, 2024. (AR 3346–76). Plaintiff, who was represented by counsel, testified, as did a VE. (*Id.*). The ALJ issued a Decision Denial on August 29, 2024. (AR 4651–73). Following that denial, the Appeals Council took no action to further review the matter in 60 days such that it became a final decision, and Plaintiff timely filed this appeal on November 25, 2024, pursuant to § 405(g) and § 1383(c)(3). (ECF No. 1).

### B. Plaintiff's Background and Testimony

Plaintiff filed an application for DIB on November 9, 2017, alleging disability beginning October 6, 2017. (AR 284–90). She was 43 years old at the time of her alleged onset date and has a high school education with vocational training in cosmetology. (AR 3350).

At the August 21, 2024 hearing, Plaintiff testified regarding her chronic headaches and migraines. She stated that she had suffered from migraines for most of her life and that, during the

3

relevant period, she experienced headaches a few times per week, sometimes requiring hospital treatment. (AR 3357–58). Plaintiff testified that she received Botox injections and medication for migraines, which helped but did not fully resolve her symptoms. (AR 3357).

With respect to her upper extremities, Plaintiff testified that she experienced numbness, pain radiating up her arms, weakness, and difficulty holding objects, causing her to drop items such as cups and plates. (AR 3358). She stated that these symptoms were present for years before her right carpal and cubital tunnel release surgery in 2022 and that her hand symptoms worsened after surgery. (AR 3353–54). Plaintiff further testified that she could not use her hands for more than two to three hours per day either before or after surgery and that she continued to have difficulty with gripping, handling, and lifting objects, particularly with her right hand. (AR 3358–60).

Regarding her mental health, Plaintiff testified that she had been treated for depression for approximately five to six years and that she continued to experience significant symptoms. (AR 3354–55). She stated that she became socially withdrawn, rarely left the house, and avoided public places due to panic attacks, which she testified occurred almost daily. (AR 3355–57). Plaintiff further testified that she experienced difficulty with memory, concentration, and focus, stating that she forgot what she was doing, lost track of conversations, and had trouble remembering appointments and dates. (AR 3355).

Finally, Plaintiff described her daily activities as limited and requiring assistance. She testified that she was unable to take care of household tasks and needed help with personal care, including dressing and drying off after showering. (AR 3356). She stated that she could shop for groceries only if accompanied by someone else due to panic attacks and that she relied heavily on family members for support. (AR 3356–57).

4

### C. Medical History

#### a. Physical Impairments

The record reflects that Plaintiff has a longstanding history of migraine headaches, predating the alleged onset date and extending back to childhood. By the time of the alleged onset date, Plaintiff's migraines were being treated by her rheumatologist with Topamax and were repeatedly described as "stable on Topamax" in late 2020 and early 2021. (AR 1587, 1592, 1606). After Plaintiff established neurology care with Dr. Joshua Daniel in May 2021, she underwent an unremarkable neurological examination, began a regimen of Botox injections, and was prescribed sumatriptan for abortive therapy. (AR 1526–32, 1540–46, 1567–71, 1573–78). Over the ensuing months, her symptoms improved substantially: she reported a reduction in frequency from daily headaches to three times per week by July 2021, two to three per week in August 2021, and by late 2022 reported experiencing only one severe migraine in the preceding three months. (AR 1530, 1544, 2214, 3122). At several follow-ups, Dr. Daniel documented that Plaintiff was "[d]oing significantly well," that her symptoms were "well controlled," and that she was "quite appreciative." (AR 1812, 2214, 3162).

Similarly, the record shows that Plaintiff intermittently complained of hand numbness and tingling prior to the alleged onset date, but objective studies and examinations were largely unremarkable for several years. An April 2017 EMG was normal, and examinations in 2017 and at multiple neurology visits between 2021 and 2022 repeatedly recorded full strength and intact sensation in the upper extremities. (AR 503–04, 674, 1531, 1545, 1577, 1813, 2215–16, 3123–24, 3163–64). At an April 2022 consultative examination, Plaintiff again demonstrated intact strength and sensation, and the examiner opined that she retained "good functionality" of both hands and would have no significant fingering limitations. (AR 2137–38). Although a September 2022 EMG

5

first confirmed bilateral carpal tunnel syndrome and right ulnar neuropathy, Plaintiff underwent right cubital/carpal tunnel release surgery in November 2022 and was noted to be "doing well" post-operatively, with residual numbness expected to improve over time. (AR 2813, 3018–19, 3110). By February 2023, Plaintiff reported that the numbness and tingling were all virtually gone, and all preoperative symptoms were largely resolved. (AR 3615–16). Plaintiff also declined occupational therapy when offered. (AR 3110, 3616).

### b.  Mental Impairments

The record reflects intermittent outpatient mental health treatment during the relevant period for symptoms of depression, anxiety, panic, and trauma-related stress. In April 2016, prior to the alleged onset date, Plaintiff underwent a psychological consultative examination with Lewis Lazarus, Ph.D., at which she reported depressed mood, frequent crying spells, diminished interest and pleasure, fatigue, excessive worry, panic symptoms, and forgetfulness. (AR 431). On examination, Plaintiff demonstrated fair attention and concentration, moderately impaired recent and remote memory, normal thought processes and content, adequate manner of relating and social skills, and fair-to-good insight and judgment. (*Id.*). Dr. Lazarus diagnosed persistent depressive disorder. (*Id.*).

After the alleged onset date, Plaintiff reported depression and anxiety to her primary-care provider in December 2017. (AR 525). Although she endorsed anxious and sad mood, contemporaneous mental-status examination findings were largely unremarkable, including normal speech, appropriate behavior, intact memory, adequate judgment, and full orientation. (*Id.*). She was prescribed paroxetine and hydroxyzine. (AR 525–26).

In April 2018, Plaintiff underwent a consultative psychological examination with Christopher Williamson, Psy.D., during which she reported depression, anxiety, and panic attacks.

(AR 582). Examination noted depressed and anxious mood with tearfulness; she was able to repeat digits forward and backward but could not complete serial sevens and recalled none of three objects after a delay. (AR 583). Dr. Williamson diagnosed major depressive disorder and panic disorder. (*Id.*).

Plaintiff initiated outpatient therapy in October 2018 to address anxiety and depression. (AR 848–858). Intake records described her as calm and cooperative, oriented, with logical thought processes, intact memory, and appropriate behavior, despite depressed mood. (AR 856–57). She thereafter engaged in therapy through approximately August 2019, with sessions focused primarily on coping skills related to anxiety, depression, and medical stressors; these treatment notes generally did not document significant abnormalities on mental-status examination. (AR 860–940, 1079–1100). Throughout this period, Plaintiff's primary-care provider managed her mental health medications, including paroxetine, alprazolam, and buspirone. (AR 1048, 1519, 1564, 1582, 1601, 1626, 1642, 1666–1667).

In April 2022, Plaintiff underwent a second consultative psychological examination with Dr. Williamson. (AR 2129–32). She reported worsening depression, panic attacks, and increased social withdrawal. (AR 2129). On examination, she appeared depressed and anxious, became distraught and hyperventilated, and was unable to complete serial sevens or recall objects after a delay, though she remained oriented and able to perform simple calculations. (AR 2130). Dr. Williamson diagnosed major depressive disorder, panic disorder, and a history of posttraumatic stress disorder. (*Id.*).

Although therapy notes did not consistently include detailed mental-status findings, neurological examinations performed by Dr. Daniel between 2021 and 2022 repeatedly documented normal mental functioning, including full orientation, intact language, attention, and

concentration, and intact short-term memory with recall of three out of three objects after a delay. (AR 1531, 1545, 1577, 1813, 2215, 3123, 3163). Plaintiff resumed outpatient therapy in January 2023, again reporting depressed mood and anxiety and working on coping strategies; treatment remained outpatient in nature. (AR 3867–3986).

Across the relevant period, providers documented Plaintiff's reports of difficulty interacting with others, discomfort in crowded environments, and reliance on family support, including her preference to attend appointments or shop when accompanied. (AR 2129). At the same time, treatment records consistently described her as cooperative with providers, appropriately groomed, oriented, and exhibiting logical thought processes, intact insight, and adequate judgment. (AR 431, 525–526, 856–857, 1531). While some visits noted tearfulness or anxious and depressed mood, other encounters reflected stable presentation and normal affect. (AR 431, 583, 1531, 2130).

In short, mental health treatment throughout the relevant period remained conservative. Plaintiff received outpatient therapy and medication management through her primary-care provider and community mental health services, and the record does not reflect inpatient psychiatric hospitalization, emergency psychiatric intervention, or a higher level of mental health care.

### D.  Testimony of Vocational Expert

Marian Marracco, VE, testified during the August 21, 2024 hearing. (AR 3361–75)**.** There was no past work to discuss so the ALJ posed the following hypothetical:

> [E]nvision a person of the [Plaintiff's] age, education, and work background. Envision that this person would be limited to light work with the following additional limitations such as they could only occasionally climb ramps and stairs. They could not climb ladders, ropes, and scaffolds. They could only occasionally balance, stoop, kneel, crouch, and crawl. They could have no concentrated exposure to dust, odors, fumes, or other pulmonary irritants. They would be further limited to the performance of simple, routine, and repetitive

tasks. They could have no interaction with the public and only occasional interaction with coworkers and supervisors. Are there any jobs in the national economy such a person could perform?

(AR 3362). The VE testified that there were jobs available in the national economy, specifically noting marker II, mail sorter, and dispatcher were jobs the hypothetical individual could perform. (AR 3362–63).

The ALJ then posed a second hypothetical, essentially repeating the first but instead of a limitation to light work, included a limitation to sedentary work. (AR 3366). The VE testified that jobs were available to such a hypothetical person, including a lens inserter for optical lenses, a polisher for optical goods, and a semiconductor bonder; however, it was subsequently discovered that the database being used by the VE to highlight available jobs was not up to date and that those jobs were not sufficiently available in the national economy. (AR 3366–72).

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citation omitted). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citations omitted); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations, quotation marks, and alteration omitted); *see also Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009).

The substantial evidence standard is a deferential standard, and an ALJ's decision cannot be set aside merely because a Court "acting *de novo* might have reached a different conclusion." *Hunter Douglas, Inc. v. N.L.R.B.*, 804 F.2d 808, 812 (3d Cir. 1986) (citations omitted); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citation omitted).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). "The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Id.* The Court has a duty to "'review the evidence in its totality,' and 'take into account whatever in the record fairly detracts from its weight.'" *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018) (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997)). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Hum. Servs.,* 722 F.2d 1150, 1153 (3d Cir. 1983) (citation omitted). Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citation omitted).

### B.  Sequential Evaluation Process

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (internal citations and footnote omitted) (alterations in original).

### III. <u>ALJ DECISION</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 6, 2017. (AR 4656).

At step two, the ALJ determined that Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease with cervical radiculopathy, fibromyalgia, chronic

11

pain syndrome, obesity, depressive disorder, and anxiety disorder. (AR 4657). The ALJ also found that several of Plaintiff's other impairments—including Hashimoto's thyroiditis, chronic kidney disease, thyroid nodule, hyperlipidemia, hirsutism and seborrheic dermatitis, asthma, allergic rhinitis, migraine headaches, and cubital/carpal tunnel—were non-severe because those conditions did not significantly limit Plaintiff's "ability to do basic work activities for at least 12 months prior to her date last insured." (AR 4657–58). In particular, the ALJ noted that Plaintiff's migraines were effectively treated with Botox injection therapy, reducing the frequency of migraines from daily to 3 times a week or as little as 3 times per month. (AR 4657). Further, with regard to her cubital/carpal tunnel the ALJ again noted that treatment was effective, specifying that Plaintiff had received a left wrist injection which helped for 3–4 months and then surgery for a carpal tunnel ligament release in late 2022, and that following surgery Plaintiff was doing well and that the ongoing numbness and tingling in her small finger was expected to improve with time. (*Id.*).

At step three, the ALJ found that none of Plaintiff's impairments, individually or in combination, met or medically equaled the severity of any listing. (AR 4658). Specifically, in evaluating the "paragraph B" criteria of the mental listings, the ALJ found that Plaintiff had moderate limitations in three broad areas—understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace—and a mild limitation in adapting or managing herself. (AR 4660–61). The ALJ also found that the "paragraph C" criteria were not satisfied. (AR 4661).

Before making the step four determination, the ALJ found that Plaintiff had the RFC to perform light work subject to the following limitations:

> could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds; could have no concentrated exposure to dust, odors, fumes, and pulmonary irritants; was limited to simple, routine, and repetitive tasks;

and could have occasional interaction with coworkers and supervisors, but no contact with the public.

(AR 4662). In formulating the RFC, the ALJ evaluated all symptoms and the extent to which those symptoms could be reasonably accepted as consistent with the objective medical evidence and other evidence, as well as the medical opinions and prior administrative medical findings. (*Id.*). The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence of record. (AR 4663–70). The ALJ noted that "the medical findings do not support symptomology and functional limitations so significant as to preclude all work[,]" and that the extreme restrictions suggested by Plaintiff were not fully supported by the objective or subjective evidence. (AR 4669). Additionally, the ALJ gave consideration to Plaintiff's non-severe impairments in formulating the RFC. (AR 4670).

The ALJ considered the opinions of the state agency medical and psychological consultants, who both performed two sets of evaluations in 2018 and again in 2022. (AR 4670–4671). In May and September 2018, the state psychological consultants determined Plaintiff had mild-moderate mental limitations but concluded she could persist at tasks that could be learned in up to 3 months on the job. (AR 189, 192–94, 209–11). In April and September of 2022, the state psychological consultants also found mild-moderate mental limitations and concluded Plaintiff could perform unskilled work, but that she did not handle stress well. (AR 1201–1208, 1215–1224). The ALJ did not find these opinions persuasive, finding that "the objective evidence of record establishes slightly greater mental limitations," and further that the findings of the consultants were "not entirely consistent with the [Plaintiff's] mental status examination and treatment notes." (AR 4670).

With respect to the state agency medical consultants, in 2018 they found Plaintiff to be capable of light exertional work and in 2022 found her to be limited to light work but with occasional postural activities. (AR 195, 213, 1204–05 1207, 1221, 1223). The ALJ noted that the opinions were both generally consistent with Plaintiff's functional abilities during office visits, but that the opinion of the second medical consultant in 2022 was only "partially persuasive" because the restrictions noted in his opinion were vague and not listed in vocationally relevant terms. (AR 4671).

At step four, the ALJ found that Plaintiff has no past relevant work. (*Id.*). However, at step five, relying on the testimony of a VE and considering Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform other work in the national economy. (AR 4671–72). Specifically, the ALJ identified the representative occupations of marker II, mail sorter, and dispatcher—each of which exists in significant numbers in the national economy. (AR 4672).

Accordingly, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from October 6, 2017, the alleged onset date, through March 31, 2023, the date last insured. (AR 4673).

## IV. **DISCUSSION**

In her appeal, Plaintiff asserts that the ALJ erred in four primary respects. First, Plaintiff contends that the ALJ erred at step two in finding her migraines and cubital/carpal tunnel conditions not to be severe, arguing that such a finding was not supported by substantial evidence. (Pl.'s Br., ECF No. 11 at 14–18). Second, Plaintiff contends that the ALJ erred at step three by finding her conditions were not of a level of severity to meet the listings requirements, arguing that such a finding was not supported by an adequate rationale nor substantial evidence. (*Id.* at 19–25). Third, Plaintiff contends that the ALJ's findings as to her RFC were not supported by

substantial evidence. (*Id.* at 25–33). Fourth, Plaintiff contends that the ALJ erred at step five and that the finding that Plaintiff could engage in alternate work was not supported by substantial evidence. (*Id.* at 33–36). Plaintiff argues that a remand for the purpose of awarding benefits is appropriate. (*Id.* at 36–37). The Court finds Plaintiff's arguments unpersuasive and, for the reasons that follow, affirms the decision of the ALJ.

### A. The ALJ's Finding at Step Two that Plaintiff's Migraines and Cubital/Carpal Tunnel Were Not Severe was Supported by Substantial Evidence

Plaintiff argues that the ALJ erred by not finding her migraines and cubital/carpal tunnel to be severe impairments at step two; or, in the alternative, if those impairments were properly deemed non-severe, the ALJ erred by failing to account for them when formulating her RFC. (*Id.* at 14–18).

An impairment is considered "severe" at step two if it "significantly limit[s an individual's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The Third Circuit has described step two as a "de minimis screening device" intended to weed out groundless claims. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). Accordingly, an ALJ's failure to designate a condition as "severe" does not require remand so long as the ALJ continues through the remaining steps of the sequential analysis and considers the condition when formulating the RFC. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)).

Here, the ALJ did not err in finding that Plaintiff's migraines were non-severe. The ALJ based its conclusion on substantial evidence, specifically noting the effective treatment received by Plaintiff which significantly reduced her migraine frequency. (AR 4657). The ALJ relied upon evidence that Plaintiff received Botox injection therapy, which reduced the frequency of her

migraines from daily to a few times per week or even as little as a few times per month. (*Id.*). While Plaintiff argues that her migraine headaches caused significant work-related limitations both before and after the initiation of Botox therapy, (Pl.'s Br., ECF No. 11 at 15), the record reflects that prior to June 2021 her migraines were repeatedly described as stable on Topamax without documented functional restrictions, (AR 1587, 1592, 1606), supporting the ALJ's conclusion that the condition did not result in more than minimal limitations during the relevant period. Thus, there was substantial evidence in the record to support the ALJ's finding that Plaintiff's migraines were not a severe impairment.

Further, the ALJ did not err in finding Plaintiff's cubital/carpal tunnel to be non-severe because that finding was supported by substantial evidence. The ALJ began the analysis by tracing the impairment through its inception and treatment, noting that Plaintiff first complained of "bilateral wrist pain, numbness, swelling, and weakness[.]" (*Id.*). The ALJ then described the course of treatment, noting Plaintiff received an injection in the left wrist, which helped for 3–4 months, and that later she had surgery for a carpal tunnel ligament release. (*Id.*). Similar to Plaintiff's migraines, the ALJ relied generally on the improvements in Plaintiff's cubital/carpal tunnel, noting that she was doing well post-surgery and that the residual numbness and tingling in her small finger was expected to improve. (*Id.*). Finally, the ALJ noted that Plaintiff "deferred formal occupational therapy services when it was offered." (*Id.*). While Plaintiff argues that the ALJ discounted her symptoms pre-surgery, (Pl.'s Br., ECF No. 11 at 15–16), this argument is once again not supported by the record, which reflects that Plaintiff had full strength, good functionality, and no significant fingering limitations across numerous examinations. (AR 503–04, 674, 1531, 1545, 1577, 1813, 2137–38, 2215–16, 3123–24, 3163–64). Thus, there was substantial evidence to support the ALJ's finding that Plaintiff's carpal/cubital tunnel was not a severe impairment.

16

Finally, in formulating Plaintiff's RFC, the ALJ considered and included impairments deemed non-severe such that even if there was error in determining them to be non-severe, any such finding was harmless. (AR 4670). Indeed, while reviewing all of Plaintiff's claimed medical conditions at step one to determine whether there is an underlying medically determinable physical or mental impairment, the ALJ made explicit reference to Plaintiff's migraine/headache issues and her cubital/carpal tunnel. (AR 4664). The ALJ removed all doubt by explicitly stating that "consideration has been given to the [Plaintiff's] non-severe impairment(s) in assessing the residual functional capacity" finding that "no specific functional vocational limitations" were presented by those conditions. (AR 4670). Because the ALJ found other impairments to be severe and proceeded through the full five-step sequential evaluation, any alleged error at Step Two did not end the analysis. Moreover, because the ALJ expressly considered Plaintiff's non-severe impairments—including her migraine/headache and cubital/carpal tunnel conditions—in formulating the RFC, any error in classifying those impairments as non-severe, which the Court finds did not occur, would in any event be harmless and would not warrant remand. *See Deranie A. v. Kijakazi,* No. 23-03157, 2024 WL 3665811, at *5 (D.N.J. Aug. 5, 2024) (any error in not considering plaintiff's hydrocephalus to be severe at step two was harmless because "although ALJ Kenneally did not discuss the hydrocephalus at step two, he considered the condition in formulating the RFC"); *Michael A. N. v. Comm'r of Soc. Sec.*, No. 23-22755, 2024 WL 4891853, at *5 (D.N.J. Nov. 26, 2024) ("Moreover, even in cases with demonstrated error at Step Two, district courts typically do not remand decisions where the ALJ found at least one [impairment to be severe] and continued with the sequential disability analysis[.]") (citing *Salles*, 229 F. App'x at 145 n.2). Here, the ALJ found Plaintiff's cervical and lumbar degenerative disc disease with cervical radiculopathy, fibromyalgia, chronic pain syndrome, obesity, depressive disorder, and

anxiety disorder to be severe impairments, and continued through the full five-step analysis. (AR 4657–72).

In sum, the ALJ findings that Plaintiff's migraines and cubital/carpal tunnel impairments were non-severe were based on substantial evidence, and the conditions were sufficiently accounted for in the RFC analysis such that there was no error.

### B. The ALJ's Finding at Step Three that Plaintiff Did Not Have a Mental Impairment that Met or Medically Equaled a Listed Impairment was Supported by Substantial Evidence

Plaintiff argues that the ALJ's finding that her mental health condition did not meet the requirements of the listings of impairments was not supported by an adequate rationale nor substantial evidence. (Pl.'s Br., ECF No. 11 at 19–25). The Court disagrees.

Plaintiff points to instances where the ALJ failed to consider certain evidence and questions the weight given to certain evidence in the ALJ's decision. (*Id.*). For example, Plaintiff points to the ALJ's reference to treatment notes indicating there were no issues with Plaintiff's long- or short-term memory, arguing that the ALJ overlooked other evidence which showed signs of memory impairment. (*Id.* at 22). The record does not support such an argument and neither does a reasonable reading of the ALJ's decision.

The ALJ methodically performed a complete analysis as to whether any of the "paragraph B" criteria were satisfied, in each instance citing specific medical and objective evidence from the record. (AR 4660–62). In each instance the ALJ began with the assertion of Plaintiff as to the severity of her condition, then proceeded to identify the evidence in the record which contradicted her. For example, with regard to the ALJ's finding that Plaintiff had a moderate limitation in interacting with others, the ALJ noted that Plaintiff "alleged that she had difficulty engaging in social activities, getting along with others, and spending time in crowds[,]" but then relied on

evidence that Plaintiff was able to "shop in stores while accompanied and spend time with friends and family" and that Plaintiff "had a good rapport with providers and was described as pleasant and cooperative." (AR 4661). Thus, the ALJ concluded that when evaluating the record as a whole no more than a moderate limitation was supported by the record with respect to Plaintiff's limitation as to interacting with others. (*Id*.) The ALJ followed this same analysis and cited evidence in the record for all other conditions. (*See* AR 4660–61 (as to Plaintiff's claims regarding her ability to understand, remember, and apply information); AR 4661 (as to Plaintiff's claims regarding her ability to concentrate, persist, or maintain pace); and AR 4661 (as to Plaintiff's claims regarding her ability to adapt or manage herself)).

Essentially, Plaintiff asks this Court to second guess the ALJ's findings and re-evaluate the record. (Pl.'s Br., ECF No. 11 at 25). But the Court's only task is to determine whether the ALJ's decision was supported by substantial evidence, and the Court cannot re-weigh the evidence. *See Chandler v. Comm'r of Soc. Sec*., 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations."). Here, the ALJ examined the voluminous record and fully evaluated medical and objective evidence in making its determination. As such, the conclusion by the ALJ that none of Plaintiff's mental impairments were of the severity required by the Listings of Impairments was supported by substantial evidence and will not be disturbed.

### C.  The ALJ's RFC Determination was Supported by Substantial Evidence

Plaintiff alleges that the ALJ's RFC determination was not supported by substantial evidence. (Pl.'s Br., ECF No. 11 at 25–33). Plaintiff substantially rehashes arguments previously raised as to the issues already discussed above, broadly asserting that the ALJ's findings were not supported by substantial evidence or that the conclusions weren't adequately explained. (*Id.*). The

Court disagrees, again noting the ALJ's conclusions, and specifically the RFC determination, was based in substantial evidence.

The ALJ found Plaintiff's RFC to be:

[L]ight work as defined in 20 CFR 404.1567(b) except she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds; could have no concentrated exposure to dust, odors, fumes, and pulmonary irritants; was limited to simple, routine, and repetitive tasks; and could have occasional interaction with coworkers and supervisors, but no contact with the public.

(AR 4662). Plaintiff first argues that the differences in the ALJ's RFC findings compared to the prior ALJ's RFC were not adequately explained. (Pl.'s Br., ECF No. 11 at 25–26). Specifically, Plaintiff notes that the prior ALJ found her RFC to be limited to sedentary work as opposed to light work. (*Id.*). "However, the current ALJ was not bound by the prior ALJ's decision or findings[ and w]hen a Social Security disability case has been remanded, 'decisions of ALJ's are generally vacated and pertinent issues are reviewed *de novo*.'" *Tamara H. v. Kijakazi*, No. 21-19353, 2022 WL 16570646, at *6 (D.N.J. Nov. 1, 2022) (quoting *Yolyemal H. v. Comm'r of Soc. Sec.*, No. 20-19755, 2022 WL 901466, at *1 (D.N.J. Mar. 28, 2022). The operative question is not whether the current ALJ appropriately differed from the prior ALJ; it is whether the ALJ's RFC determination in the current proceeding was based on substantial evidence, which as described below, the Court finds was the case here.

Plaintiff spends little time addressing the ALJ's findings regarding mental impairments, repeating her arguments that the ALJ erred with respect to its findings as to the severity of those impairments and that greater limitations should have been found. (Pl.'s Br., ECF No. 11 at 27–28). However, as explained, *supra* in Section IV.B, the ALJ based its findings regarding Plaintiff's mental impairments on substantial evidence. (AR 4660–62). Moreover, Plaintiff fails to highlight

what greater limitations the ALJ failed to consider or include and does not cite anything in the record to support the assertion that greater limitations should have been included.

Regarding physical limitations, Plaintiff first repeats her argument as to why the ALJ's RFC differed from the prior ALJ's RFC, again focusing on the light work as compared to sedentary work found by the prior ALJ. (*Id.* at 28). Plaintiff asserts that the increased capacity found by the ALJ was merely a summary of the medical evidence, lacking a "connection between the findings to any particular level of functioning." (*Id.* at 29). Despite Plaintiff's contentions to the contrary, the ALJ's RFC was based on substantial evidence, and the findings as to Plaintiff's medical impairments were adequately connected to the resulting RFC determination.

The ALJ described the medical and subjective evidence being considered, (AR 4663–71), and specifically identified instances where the evidence of record did not support Plaintiff's suggested extreme restrictions. (AR 4668–70). For example, regarding Plaintiff's back pain and spine disorders, the ALJ notes that her back pain improved with injection therapy, and that "[s]he required less frequent care between 2019–2022 for her pain symptoms, and she continued to report that she benefited from the medications with increased function related to spine and rheumatological issues." (AR 4669). The ALJ observed generally that "[t]here is little objective evidence and limited subjective evidence supporting the extreme restrictions suggested by [Plaintiff]." (*Id.*). Finally, the ALJ considered the opinion evidence from the state psychological and medical consultants, appropriately indicating which opinions were found to be persuasive or if not, the reasons therefor. (AR 4670–71). Specifically, the ALJ discounted the assessments from the state psychological consultants finding them not to be persuasive because the assessments "are not entirely consistent with [Plaintiff's] mental status examination and treatment notes." (AR 4670). Regarding the state medical consultants, the ALJ explained that "their opinions are

supported by an explanation of the evidence" and that the "opinions are generally consistent with [Plaintiff's] functional abilities during office visits." (AR 4670–71). In short, the ALJ's RFC determination was based on substantial evidence.

Plaintiff contends that the ALJ distorted "thousands of pages of record by accentuating the positive and eliminating the negative[,]" but does not specify what was distorted or omitted in the ALJ's analysis. (Pl.'s Br., ECF 11 at 29). The ALJ recounted evidence of medical treatment, including treatment by a rheumatologist, orthopedist, pain management providers, a therapist, a primary care physician, and three consultative examiners. (AR 4664–68). Moreover, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). The ALJ's analysis and evidence relied upon clearly meets the low "more than a scintilla" bar it must pass to constitute substantial evidence. *Biestek*, 139 S. Ct. at 1154.

Finally, Plaintiff renews her argument that the ALJ erred by not finding her migraines or cubital/carpal tunnel to be severe and failed to consider those impairments in the RFC. (Pl.'s Br., ECF No. 11 at 30–31). However, as described, *supra* in Section IV.A, the ALJ's findings as to Plaintiff's migraines and cubital/carpal tunnel were based on substantial evidence and considered in the RFC. (AR 4657, 4664, 4669–70).

In short, the ALJ's findings with respect to Plaintiff's RFC were all supported by substantial evidence.

### D. The Testimony of the Vocational Expert Provided Substantial Evidence for the ALJ's Finding of Alternative Work Available to Plaintiff

Finally, Plaintiff argues that there was not substantial evidence to support the ALJ's finding of alternative work available to Plaintiff. (Pl.'s Br., ECF No. 11 at 33–35). Plaintiff's argument that because the RFC determination was erroneous any determination as to alternative work

activity must also be erroneous, (*id.* at 33), fails for the reasons discussed above. Beyond that, Plaintiff attacks the ALJ's finding that she could perform light work and not just sedentary work, insinuating without citing anything in support that the decision was made to fit the testimony of the VE as to the lack of work if Plaintiff were limited to sedentary status. (*Id.* at 34–35). The Court disagrees.

The ALJ based its findings on substantial evidence, posing a hypothetical question to the VE which adequately conveyed all of Plaintiff's impairments and limitations, then relying on that testimony in concluding that alternative work was available to Plaintiff. (AR 3362–63, 4671–72). The testimony from the VE constitutes substantial evidence to support the ALJ's determination.

## CONCLUSION[2]

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Acting Commissioner. An appropriate Order will follow.

**CHRISTINE P. O'HEARN**
**United States District Judge**

---

[2] Plaintiff also sought a direct award of benefits. While the Court has the ability to direct an award of benefits, it can only do so if (1) the administrative record is fully developed, and (2) substantial evidence in the record indicates that Plaintiff is disabled and entitled to benefits. *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357–58 (3d Cir. 2008). Here, the request is moot based on the Court's affirmance of the ALJ's decision.